**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

**CRIMINAL ACTION NO. 24-5-DLB-CJS-6**

**UNITED STATES OF AMERICA**                                            **PLAINTIFF**

**VS.**              **MEMORANDUM OPINION AND ORDER**

**JOHN CHRISTOPHER DAVIS**                                      **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court upon Defendant John Christopher Davis's Motion to Suppress. (Doc. # 117). After the United States filed its Response (Doc. # 120) and Defendant filed his Reply (Doc. # 121), the Court conducted an evidentiary hearing on the Motion on November 1, 2024. (Doc. # 122). Defendant was present for the hearing and was represented by Attorney Joshua Michael McIntosh. The United States was represented by Assistant United States Attorney Anthony J. Bracke. At the conclusion of the hearing, the Court took the Motion under submission. For the following reasons, Defendant's Motion to Suppress is **denied**.

**I.    ISSUES RAISED**

Defendant moves the Court to suppress evidence seized during a warrantless search of his person conducted on or about June 24, 2023. (Doc. # 117 at 1-2). The search was conducted after officers discovered Defendant unconscious behind the wheel of a running vehicle. (*Id.* at 2-4; Doc. # 120 at 1-3). After entering the vehicle, officers searched Defendant's person and uncovered a substantial amount of cocaine. (*Id.*). In his Motion, Defendant asserts that the evidence should be suppressed for each of four

1

reasons: (1) he did not consent to the search; (2) the search-incident-to-lawful-arrest exception to the warrant requirement did not apply; (3) if the search of his person was a *Terry* frisk, it was unlawful; and (4) "the inevitable discovery doctrine does not save the evidence in this case from exclusion." (Doc. # 117 at 4-13).

In its Response, the United States argues that the officers' entry into Defendant's vehicle was a legal exercise of their community caretaker function. (Doc. # 120 at 3-6). The United States also argues that the officers had reasonable suspicion to investigate Defendant for being in control of a motor vehicle while under the influence. (*Id.* at 6-7). Additionally, the United States argues that the search of Defendant's person was incident to a lawful arrest. (*Id.* at 7-9).

In his Reply, Defendant argues that the community caretaker doctrine did not apply to the officers' entry into Defendant's vehicle. (Doc. # 121 at 1-6). Defendant further argues that the officers did not have reasonable suspicion that he was in physical control of a vehicle while under the influence and that the search of his person was illegal. (*Id.* at 6-12).

## II.   FINDINGS OF FACT

During the evidentiary hearing held on November 1, 2024, the Court heard testimony from two witnesses from the Covington Police Department: (1) Sergeant David Griswold and (2) Officer Douglas Ullrich. Defendant did not call any witnesses, nor did he testify on his own behalf. Weighing the credibility of the witnesses, and considering the exhibits admitted during the hearing, the Court makes the following factual findings.

On June 24, 2023, at approximately 10:52 p.m., Covington police received a 911 call from a person reporting that a man was passed out in a running vehicle in the parking

lot of the Goodwill Village Apartments in Covington, Kentucky. The caller stated that he had unsuccessfully attempted to wake up the man in the vehicle. Sergeant Griswold and Officer Ullrich were dispatched to the scene, along with several paramedics.

Sergeant Griswold was the first on the scene, arriving there approximately three minutes after the 911 call was placed. At the scene, Sergeant Griswold observed a vehicle matching the 911 caller's description and stated location. The vehicle was parked in a handicap parking space facing a building with a concrete wheel stop in front of the vehicle. After approaching the vehicle, Sergeant Griswold observed that the driver's side window was open, the vehicle was running but in park, and that Defendant was "slumped over" in the driver's seat. Sergeant Griswold also heard loud music coming from Defendant's cell phone which he held in his hand.

Sergeant Griswold then shined a flashlight inside the vehicle and said "Hey, bub" to Defendant. After Defendant did not react, Sergeant Griswold reached into the vehicle through the open driver's side window and turned off the ignition. Sergeant Griswold did so based on his "past experience" as a law enforcement officer, which informed him that drivers suddenly roused behind the wheel of a running vehicle could "suddenly . . . throw it into drive" upon waking, causing harm to themselves and others. Sergeant Griswold testified that he wanted to avoid such a dangerous situation and accordingly did not want to wake Defendant.

While reaching into the vehicle to turn off the ignition, Sergeant Griswold observed unmarked pills in a baggie inside the driver's side door. Sergeant Griswold then unlocked and opened the door and observed another baggie containing some "green plant material" which he suspected to be marijuana. Sergeant Griswold retrieved the two

3

baggies and placed them on the roof of the vehicle. At around this time, Officer Ullrich and the paramedics arrived on the scene.

Upon arriving, Officer Ullrich parked his police cruiser behind Defendant's vehicle. Officer Ullrich then walked to the passenger side of the vehicle to "see if there were any threats visible in the car." There, Officer Ullrich observed an open bottle of liquor in the back of the vehicle as well as the baggies that Sergeant Griswold had placed on its roof. During his testimony, Officer Ullrich noted that one of the baggies contained "some sort of pills" and the other "was obviously a bag of marijuana." The placement of the baggies on the vehicle's roof signaled to Officer Ullrich that Sergeant Griswold had recently removed them from the vehicle. Officer Ullrich then opened the passenger side door to "address" Defendant and see "if there was any threat or any issue."[1] Afterward, Officer Ullrich walked over to the driver's side of the vehicle.

At around this time, one of the paramedics successfully performed a sternum rub on Defendant to wake him up. Upon waking, Defendant appeared confused and disoriented. One of the paramedics indicated to Defendant that he needed to go to the hospital and asked Defendant to step out of the vehicle. Upon exiting the vehicle, Defendant placed one of his hands in his right pants pocket, causing Officer Ullrich to fear that Defendant could be in possession of a weapon. Officer Ullrich then placed Defendant's hands on the hood of the vehicle and conducted a pat down of Defendant's person. Upon searching Defendant's person, Officer Ullrich uncovered a bag of cocaine in one of Defendant's pants pockets. Officer Ullrich then placed Defendant in handcuffs.

---

[1] Defendant did not challenge the legality of Officer Ullrich opening the passenger's side door in his briefing or at the evidentiary hearing, and the Court will not address the issue *sua sponte*.

The officers and paramedics then discussed whether Defendant should be transported to the hospital in an ambulance of if he could be transported by police. After the paramedics agreed it would be safe to transport Defendant in a police vehicle, Officer Ullrich placed Defendant in his police cruiser and drove Defendant to a hospital. At the hospital, Defendant was medically cleared to go to jail, and Officer Ullrich then drove Defendant to jail.

### III. ANALYSIS

Defendant argues that the warrantless entry into his vehicle and subsequent search of his person violated the Fourth Amendment. (Doc. # 117). The Fourth Amendment provides, in pertinent part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV. Generally, if a search or seizure is not conducted in compliance with the Fourth Amendment, all evidence obtained because of the search or seizure must be suppressed. *See United States v. Gross*, 550 F.3d 578, 583 (6th Cir. 2008) ("[E]vidence and statements obtained from [an] illegality must be excluded as 'fruit of the poisonous tree.'") (citing *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)). Warrantless searches are presumptively unreasonable unless there is some kind of exigency. *United States v. McClain*, 444 F.3d 556, 562 (6th Cir. 2005). The burden is on the United States to demonstrate the applicability of an exception to the warrant requirement. *Id.*

Here, it is undisputed that the challenged initial entry into Defendant's vehicle and search of his person were not authorized by a warrant. Therefore, to pass constitutional muster, the United States must establish that one of the specifically established

exceptions to the warrant requirement applied. *Katz v. United States*, 389 U.S. 347, 357 (1967).

Based on the facts elicited at the evidentiary hearing and the arguments of the parties, the Court concludes that the warrantless entry into Defendant's vehicle and search of his person did not violate the Fourth Amendment. Specifically, for the reasons stated herein, the Court concludes that: (1) the officers' entry into Defendant's vehicle was a lawful exercise of their community caretaker function and (2) the search of Defendant's person was incident to a lawful arrest. The Court addresses each of these issues in turn.

### A. The officers' entry into Defendant's vehicle was a lawful exercise of their community caretaker function.

"[T]he community-caretaker exception allows officers to perform certain tasks that are not traditional law-enforcement functions without a warrant." *United States v. Mason*, No. 21-3225, 2022 WL 853304, at *3 (6th Cir. Mar. 23, 2022) (quoting *Taylor v. City of Saginaw*, 922 F.3d 328, 335 (6th Cir. 2019)) (internal quotation marks omitted). This exception is "narrow," and an officer's actions "must be totally divorced from the direction, investigation, or acquisition of evidence relating to the violation of a criminal statute to qualify as caretaking." *Mason*, 2022 WL 853304, at *3 (quoting *United States v. Williams*, 354 F.3d 497, 508 (6th Cir. 2003)) (internal quotation marks omitted).

The circumstances leading to the officers' initial contact with Defendant shows that they were exercising their community caretaking function when they initially entered Defendant's vehicle. As noted above, Covington police received a 911 call stating that Defendant was passed out in his vehicle and that the caller had unsuccessfully attempted to wake Defendant. After arriving on the scene, Sergeant Griswold discovered Defendant

6

slumped over in his vehicle and unresponsive after Sergeant Griswold shined a flashlight inside the vehicle and attempted to speak to Defendant.  Where "police find a person unconscious . . . in a vehicle, it is reasonable for them to enter the vehicle for the purpose of giving aid to the person in distress and of finding information bearing on the cause of his condition."  *United States v. Morgan*, 71 F.4th 540, 543 (6th Cir. 2023) (quoting Wayne R. LaFave, et al., 2 Criminal Procedure § 3.7(e) (4th ed. Supp. 2022)); *see also id.* at 545 ("An intoxicated driver in a running car could endanger pedestrians and other drivers.").[2] Moreover, Defendant does not identify—and the Court does not see—any reason to conclude that the officers' entry into Defendant's vehicle was made "with any traditional law-enforcement purpose" in mind, such as "the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute."  *United States v. Lewis*, 869 F.3d 460, 463 (6th Cir. 2017).  Indeed, the community caretaking aspect of the officers' actions is underscored by the fact that multiple paramedics were dispatched to the scene.

Based on the above, the Court concludes that the officers' entry into Defendant's vehicle was a lawful exercise of their community caretaker function.  Before doing so, however, the Court must address three arguments to the contrary that Defendant raised in his briefing and at the evidentiary hearing.  First, Defendant argues that Sergeant Griswold had "less intrusive options" to address concerns about Defendant, and accordingly that the officer's actions cannot be considered community caretaking under

---

[2] During the evidentiary hearing, defense counsel appeared to dispute whether Defendant posed a danger to himself or others while unconscious behind the wheel of the vehicle.  Defense counsel specifically noted that Defendant's vehicle was parked facing a building, that there was a concrete wheel stop in front of the vehicle, and that Officer Ullrich had parked his police cruiser behind Defendant's vehicle.  That said, Sergeant Griswold testified that he had personally observed vehicles "roll over" wheel stops, and Officer Ullrich observed that Defendant could have crashed into a building had he put the vehicle in gear and pressed the accelerator.

Sixth Circuit precedent. (Doc. # 121 at 1-6). Second, Defendant argues that Sergeant Griswold did not discover the evidence at issue "in the course of advancing the caretaking function at hand," as is required. (*Id.* at 4) (emphasis omitted). Finally, at the evidentiary hearing, Defendant argued that Sergeant Griswold's admitted desire to not wake Defendant shows that the officer was not exercising his community caretaker function. Each of these arguments fail, and the Court addresses them in turn.

### 1. That Sergeant Griswold has less intrusive options to address his concerns about Defendant is not dispositive.

Defendant first argues that Sergeant Griswold "had less intrusive options" to address concerns about Defendant, and accordingly that the officer's actions cannot be considered community caretaking under Sixth Circuit precedent. (Doc. # 121 at 1-6). In support, Defendant cites *United States v. Morgan* in which the Sixth Circuit held that an officer's actions could not be considered community caretaking. (*Id.* at 1-4 (citing 71 F.4th 540 (6th Cir. 2023)). Defendant argues that this case is similar to *Morgan* and unlike the other cases the Sixth Circuit cited approvingly in its *Morgan* opinion. (*Id.*). The Court disagrees.

In *Morgan*, the Sixth Circuit held that an officer violated the Fourth Amendment when he, "without warning, . . . opened [the defendant's] car door to check on him." 71 F.4th at 545. The court found it significant that the officer did not try to "arouse [the defendant] by knocking on the door or shining a light in the car" before entering the vehicle, and noted that the officer had "less intrusive paths available to him for addressing his concerns" about the defendant. *Id.* at 542, 545-56. Here, in contrast, Sergeant Griswold *did* take advantage of less intrusive paths. After observing Defendant slumped over in his vehicle, Sergeant Griswold shined a flashlight inside and called out to

8

Defendant. Although Sergeant Griswold could have done more to alert Defendant before entering the vehicle, such as speaking more loudly or knocking on the vehicle, officers engaged in community caretaking are not required "to exhaust all conceivable alternatives." *Id.* at 546 (internal quotation marks omitted). Instead, "the intrusion must reasonably match the problem at hand." *Id.* at 545-46.

Unlike *Morgan*, this case is more like the cases the Sixth Circuit cited approvingly in its *Morgan* opinion. In *United States v. Greene*, for example, the Sixth Circuit held that officers who observed individuals asleep or unconscious in a running vehicle after shining a light inside, knocked loudly on the window, and, when the occupants did not wake, opened the door, were engaging in community caretaking. No. 20-6316, 2021 WL 3199239, at *1, 3-4 (6th Cir. July 29, 2021). And in *United States v. Mason*, the Sixth Circuit held that officers who broke a vehicle's window after observing its occupants slumped over inside and unresponsive to the officers' knocks and yells were also engaging in community caretaking. No. 21-3225, 2022 WL 853304, at *1-5 (6th Cir. Mar. 23, 2022). Like in *Greene*, Sergeant Griswold shined a light inside Defendant's vehicle, and like in *Mason*, Sergeant Griswold observed Defendant slumped over in his vehicle and attempted to speak to Defendant before entering the vehicle. Although Sergeant Griswold did not knock on the car's window as the officers in *Greene* and *Mason* did, the car window here was already down, and he was not required "to exhaust all conceivable alternatives." *Morgan*, 71 F.4th at 546 (internal quotation marks omitted).

For these reasons, Defendant's first community caretaker argument is rejected.

### 2. *Sergeant Griswold discovered the evidence at issue in the course of advancing the caretaking function at hand.*

Defendant next argues that Sergeant Griswold did not discover the evidence at issue while advancing his community caretaker function. (Doc. # 121 at 4). In support, Defendant claims that Sergeant Griswold did not attempt to render aid to Defendant before discovering the evidence at issue. (*Id.*). "Instead," Defendant argues, Sergeant Griswold "discovered the drugs only after illegally opening the door, conducting a search, and seizing the alleged drugs, all while [Defendant] remained passed out." (*Id.*).

Defendant's argument ignores the fact that the officers and the paramedics arrived on the scene at basically the same time, and that the latter did provide immediate aid to Defendant. Defendant does not cite—and the undersigned is unaware of—any authority requiring an officer to provide immediate aid to a defendant in similar circumstances. Moreover, the Court does not agree with Defendant's more general claim that Sergeant Griswold was not engaged in community caretaking when he discovered the evidence at issue. As noted above, Sergeant Griswold discovered the evidence after observing Defendant slumped over in his vehicle and unresponsive after the officer shined a flashlight inside and called out to Defendant. And as the Court has already acknowledged, such circumstances demonstrate that Sergeant Griswold was exercising his community caretaking function when he entered Defendant's vehicle.

For these reasons, Defendant's second community caretaking argument is rejected.

### 3. *Sergeant Griswold's desire not to wake Defendant is immaterial.*

Finally, at the evidentiary hearing, Defendant argued that Sergeant Griswold's admitted desire not to wake Defendant shows that the officer was not exercising his

10

community caretaker function. As noted above, Sergeant Griswold observed that drivers suddenly roused behind the wheel of a running vehicle could "suddenly . . . throw it into drive" upon waking, causing harm to themselves and others. Sergeant Griswold testified that he wanted to avoid such a dangerous situation and accordingly did not want to wake Defendant. According to Defendant, Sergeant Griswold's subjective desire not to wake Defendant defeats any claim that the officer was engaged in community caretaking. The Court disagrees.

"In the Fourth Amendment context, . . . [courts] have almost uniformly rejected invitations to probe subjective intent[,]" *Nieves v. Bartlett*, 587 U.S. 391, 403 (2019), including where officers are performing their community caretaker function. *Ziegler v. Aukerman*, 512 F.3d 777, 785 (6th Cir. 2008); *see also Whren v. United States*, 517 U.S. 806, 813 (1996) (noting that "[s]ubjective intent alone . . . does not make otherwise lawful conduct illegal or unconstitutional."). Indeed, in assessing whether officers' actions are constitutional, courts "generally review their conduct under objective standards of reasonableness." *Nieves*, 587 U.S. at 403. Thus, the Court concludes that Sergeant Griswold's subjective desire not to wake Defendant is immaterial as to whether the officer was engaged in community caretaking.

Moreover, it was reasonable for Sargent Griswold to conclude that rousing Defendant could cause him to "do something unpredictable, such as throwing the car into gear and stepping on the accelerator." *Burns v. Mahoney*, No. CV-11-96-BLG-RFC, 2011 WL 6780970, at *2 (D. Mont. Dec. 27, 2011); *see also United States v. Peoples*, No. 13-CR-0141-CVE, 2013 WL 4521174, at *3 (N.D. Okla. Aug. 26, 2013) (finding persuasive testimony that "an intoxicated person or a person with a medical condition may overreact

11

when he wakes up."). And as the Court noted above, Sergeant Griswold's actions were in line with Sixth Circuit precedent on community caretaking.

For these reasons, Defendant's third and final community caretaking argument is rejected. Having rejected each of Defendant's community caretaking arguments, the Court concludes that the officers' entry into Defendant's vehicle was a lawful exercise of their community caretaker function.

### B.     The search of Defendant's person was incident to a lawful arrest.

Having concluded that the officers' entry into Defendant's vehicle was lawful, the Court must now determine whether the ensuing search of Defendant's person was constitutional. For the following reasons, the Court concludes that it was.

As a preliminary matter, the officers had probable cause to arrest Defendant for possession of marijuana. Sergeant Griswold discovered in Defendant's vehicle a baggie containing "green plant material" which neither party disputes was marijuana. During his testimony, Officer Ullrich observed that the baggie was "was obviously a bag of marijuana" and noted that its placement on the vehicle's roof signaled to him that Sergeant Griswold had recently removed it from the vehicle. When the baggie was discovered, the possession of any amount of marijuana was illegal in Kentucky, *see* K.R.S. § 218A.1422 (2023), and any use of marijuana remains federally illegal. *See* 21 U.S.C. § 844. Thus, the discovery of marijuana in Defendant's vehicle gave the officers probable cause to arrest Defendant. *See United States v. Conerly*, No. 10-20380, 2010 WL 4723434, at *5 (E.D. Mich. Oct. 8, 2010), *report and recommendation adopted by* 2010 WL 4723440 (E.D. Mich. Nov. 15, 2010); *see also Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has

committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."). Indeed, a report generated by one of the officers indicates that Defendant was arrested for possession of marijuana. (*See* Doc. # 117-1 at 1).

"When carrying out a custodial arrest, an officer may conduct, without a warrant, a search of the arrestee's person. . . ." *United States v. Williams*, 483 F.3d 425, 430 (6th Cir. 2007) (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)) (internal quotation marks omitted). Based on the above, the Court conclude that Officer Ullrich's search of Defendant's person was incident to a lawful arrest. Before doing so, however, the Court must address two arguments to the contrary that Defendant raised in his briefing and at the evidentiary hearing. First, Defendant argues that the search of his person was conducted before he was arrested, and that therefore it could not have been incident to his arrest. (Doc. # 117 at 4-5; Doc. # 121 at 7-8). Second, Defendant argues that he was immune from prosecution for marijuana possession under Kentucky's Good Samaritan Law, and that therefore the officers lacked probable cause to arrest him and search his person. (Doc. # 117 at 12; Doc. # 121 at 8-12). Each of these arguments fail, and the Court addresses them in turn.

    **1. *That Defendant's person was searched before he was formally arrested is immaterial.***

Defendant first argues that the search of his person was conducted before he was arrested, and that therefore it could not have been incident to his arrest. (Doc. # 117 at 4-5; Doc. # 121 at 7-8). This argument, however, ignores the permissible scope of a search incident to a lawful arrest. As the Sixth Circuit has made clear, "the search-incident-to-a-lawful-arrest rule also permits an officer to conduct a full search of an

13

arrestee's person *before* he is placed under lawful custodial arrest so long as the formal arrest follows quickly on the heels of the challenged search of his person and the fruits of that search are not necessary to sustain probable cause to arrest him." *United States v. Montgomery*, 377 F.3d 582, 586 (6th Cir. 2004) (quoting *Rawlings v. Kentucky*, 448 U.S. 98, 110-11 n.6 (1980)) (cleaned up and emphasis in original). As noted above, the officers had probable cause to arrest Defendant for possession of marijuana when they discovered the baggie in his vehicle.

For these reasons, Defendant's first search-incident-to-a-lawful-arrest argument is rejected.

### 2. *Suppression of the evidence at issue is not justified under Kentucky's Good Samaritan Law.*

Defendant finally argues that he was immune from prosecution for marijuana possession under Kentucky's Good Samaritan Law, and therefore the officers lacked probable cause to arrest him and search his person. (Doc. # 117 at 12; Doc. # 121 at 8-12). The Court disagrees.

As this Court has noted, "Kentucky law provides exemption from prosecution for possession of a controlled substance or drug paraphernalia for individuals who, in good faith, request medical assistance for the victim of a drug overdose and remain with the overdose victim until the requested assistance is provided." *United States v. Molina*, 569 F. Supp. 3d 596, 608 (E.D. Ky. 2021) (citing K.R.S. § 218A.133)). Defendant argues that K.R.S. § 218A.133 applied to him, and therefore that he could not have been arrested for possessing marijuana. But even if the law did apply to Defendant, it does not justify suppressing the evidence here. "In keeping with the plain language of the statute, the Kentucky Court of Appeals has confirmed that exclusion of evidence is not a remedy

14

under the Good Samaritan Law." *Id.* (citing *Commonwealth v Milner*, No. 2018-CA-001547-MR, 2019 WL 5280800 (Ky. Ct. App. Oct. 18, 2019).

Moreover, and more importantly, whether the Kentucky Good Samaritan Law applied to Defendant is immaterial as to whether any Fourth Amendment violation occurred. Indeed, "[t]his Court applies Fourth Amendment jurisprudence, not state law, to determine whether evidence should be suppressed in a criminal proceeding. *Id.* at 609; *see also United States v. Wright*, 16 F.3d 1429, 1434 (6th Cir. 1994) (that a state "may . . . require greater protection against searches and seizures than the fourteenth amendment is of no avail to a defendant in federal court, under prosecution for a federal crime.").

For these reasons, Defendant's second and final search-incident-to-a-lawful-arrest argument is rejected. Having rejected each of Defendant's search-incident-to-a-lawful-arrest arguments, the Court concludes that the search of Defendant's person was incident to a lawful arrest.

## IV.   CONCLUSION

Based on the record, the arguments presented, and the authority cited, the Court concludes that the warrantless entry into Defendant's vehicle and subsequent search of his person did not violate the Fourth Amendment. Thus, the Court rejects Defendant's proffered ground for suppressing the evidence at issue.[3]

---

[3] Having concluded that (1) the officers' entry into Defendant's vehicle was a lawful exercise of their community caretaker function and (2) the search of Defendant's person was incident to a lawful arrest, the Court need not—and will not—address the parties' other arguments for or against the suppression of the evidence at issue.

Accordingly, **IT IS ORDERED** that Defendant John Christopher Davis's Motion to Suppress (Doc. # 117) is **DENIED**.

This 12th day of November, 2024.



Signed By:
David L. Bunning
United States District Judge

G:\Judge-DLB\DATA\ORDERS\Covington Criminal\2024\24-5-6 MOO re MTS.docx